# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALE L. MIESEN, an individual who is a shareholder and who is also bringing this action on behalf of and/or in the right of AIA Services Corporation and its wholly owned subsidiary AIA Insurance, Inc., Plaintiff-Appellant,

v.

JOHN D. MUNDING, married individual and the community property comprised thereof; MUNDING, P.S., a Washington Professional Services Corporation; CRUMB & MUNDING, P.S., a Washington Professional Services Corporation, Defendants-Appellees,

and

JOHN OR JANE DOES I-III, unknown individuals; AIA SERVICES CORPORATION, an Idaho corporation and AIA INSURANCE, INC., an Idaho corporation, Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON, SPOKANE
THE HON. ROSANNA MALOUF PETERSON,
U.S. DISTRICT JUDGE, PRESIDING

## APPELLANT'S OPENING BRIEF

Roderick C. Bond
Roderick Bond Law Office, PLLC
601 108th Ave. NE, Ste. 1900
Bellevue, WA 98004
Tel: (425) 591-6903
rod@roderickbond.com
Attorney for Plaintiff-Appellant Dale L. Miesen

# TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT AND IDENTITY OF PARTIES ...........1

     A.     There Is a Basis for the District Court's Jurisdiction. ...........................1

     B.     There Is a Basis and Information Establishing this Court's Jurisdiction. ............................................................................................1

     C.     The Filing Dates Establish that this Appeal Is Timely. ........................2

II.    ISSUES PRESENTED ON REVIEW .....................................................................2

III.   ADDENDUM ..............................................................................................................3

IV.   STATEMENT OF THE CASE .................................................................................4

     A.     Factual Background .....................................................................................4

     B.     Procedural History ....................................................................................13

V.    SUMMARY OF THE ARGUMENT .....................................................................20

VI.   ARGUMENT ............................................................................................................21

     A.     Standards of Review ..................................................................................21

     B.     The District Court Erred by Dismissing Miesen's Claims For Lack of Subject Matter Jurisdiction Because the AIA Corporations Were Properly Aligned as Defendants Because the FAC Pleaded Significant Facts that Miesen Is Antagonistic to the AIA Corporations Based on Serious Conflicts of Interest, Tortious Conduct and Malfeasance Alleged Against the Directors and Officers and Their Refusal to Take Action. ........................................23

          1.     Additional Standard of Review ..................................................23

          2.     The District Court Erred Because Miesen Properly Pleaded and Named AIA Services and AIA Insurance as Defendants. .........................................................................23

3.     The District Court Erred and Abused Its Discretion by Not Determining Alignment of the AIA Corporations Prior to Dismissing Miesen's FAC. ....................................................29

C.     The District Court Erred and Abused Its Discretion by Determining that Miesen's Derivative Demands Were Insufficient...31

1.     Additional Standard of Review....................................31

2.     The District Court Erred and Abused Its Discretion by Dismissing Miesen's Claims Because His Two Derivative Demand Letters Were More Than Sufficient and the AIA Corporations Never Requested Any Clarification or Further Information in Response to the Letters.....................................31

D.     At a Minimum, the District Court Erred and Abused Its Discretion by Refusing to Grant Miesen Leave to File an Amended Complaint. ........................................................39

1.     Additional Standard of Review....................................39

2.     There Was No Basis for the District Court to Dismiss Miesen's Claims Without Granting Him Leave to File a Second Amended Complaint. ....................................39

E.     The District Court Erred and Abused Its Discretion by Failing to Consider Evidence....................................................41

1.     Additional Standard of Review....................................41

2.     The District Court Abused Its Discretion by Not Considering Miesen's June 13, 2016 Derivative Demand Letter (Dkts. 8-13 & 8-14) that Was Attached to the Louvier Declaration and When It Ruled that It Would Not Consider Declarations or Affidavits Filed in Support of Previous Motions. ....................................................42

3.     The District Court Erred and Abused Its Discretion by Not Taking Judicial Notice of the Documents Requested by Miesen. ....................................................44

F.    This Court Should Not Affirm on the Alternative Grounds
      Suggested by the District Court on the Statutes of Limitations or
      the Viability of Miesen's Claim Under Washington's Consumer
      Protection Act. ..................................................................................45

      1.    Additional Standard of Review ..................................................45

      2.    Pursuant to the Continuous Representation Rule, Miesen's
            Claims for Legal Malpractice, Breach of Fiduciary Duties
            and Any Other Applicable Claims Were Timely Because
            the Munding Defendants Continued to Represent the AIA
            Corporations on Appeal and Continue to Represent Them in
            the Still Active California Lawsuit. ..........................................45

VII.   CONCLUSION ................................................................................51

VIII.  CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ...........................52

IX.    STATEMENT OF RELATED CASES .........................................................53

X.     ADDENDUM TABLE OF CONTENTS .......................................................54

# TABLE OF AUTHORITIES

## CASES

*Develop. Finance Corp. v. Alpha Housing & Health Care, Inc.*,
   54 F.3d 156 (3d Cir. 1995) ........................................................................29

*AE ex rel. Hernandez v. County of Tulare*,
   666 F.3d 631 (9th Cir. 2012) ...................................................................39

*Bright v. Maznik*,
   162 Idaho 311 396 P.3d 1193 (2017) ......................................................31

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
   862 F.3d 951 (9th Cir. 2017) ...................................................................45

*Doe v. United States*,
   58 F.3d 494 (9th Cir. 1995) .....................................................................40

*Dougherty v. City of Covina*,
   654 F.3d 892 (9th Cir. 2011) ...................................................................21

*GemCap Lending I, LLC v. Taylor*,
   677 Fed.Appx. 351 (9th Cir. 2017) .........................................................10

*Gonzales v. CarMax Auto Superstores, LLC*,
   840 F.3d 644 (9th Cir. 2016) ...................................................................23

*Hay v. American Safety Indemnity Co.*,
   270 F.Supp.3d 1252 (W.D. Wash. 2017) ................................................23

*Herrington v. County of Sonoma*,
   706 F.2d 938 (9th Cir. 1983) .....................................................................2

*In re Digimarc Corp. Derivative Litig.*,
   549 F.3d 1223 (9th Cir. 2008) ............................................ 24, 26, 29, 30

*In Re Establishment Inspection of Skil Corp.*,
   846 F.2d 1127 (7th Cir.1988) ...................................................................2

*Independence Mining Co. v. Babbitt*,
   105 F.3d 502 (9th Cir. 1997) ................................................................22

*Janicki Logging & Const. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.*,
   109 Wash. App. 655, 37 P.3d 309, (2011) ...........................................46

*Kamen v. Kemper Financial Services, Inc.*,
   500 U.S. 90, 111 S.Ct. 1711 .......................................................... 31, 32

*Laclette v. Galindo*,
   184 Cal.App.4th 919, 109 Cal.Rptr.3d 660 (2010) ................................ 47, 48, 49

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ......................................................... 22, 43, 45

*Lockton v. O'Rourke*,
   184 Cal.App.4th 1051, 109 Cal.Rptr.3d 392, (2010) .........................46

*May Department Store v. Graphic Process Co.*,
   637 F.2d 1211 (9th Cir. 1980) ..............................................................40

*McCann v. McCann*,
   138 Idaho 228 61 P.3d 585 (2002) ................................................. 32, 37

*McGuckin v. Smith*,
   974 F.2d 1050 (9th Cir. 1992) ................................................................1

*Miesen v. Henderson*,
   No. 1:10-cv-00404-CWD, 2017 WL 1458191, at *7
   (D. Idaho April 21, 2017) ............................................................. 12, 38

*Muniz v. Amec Const. Mgmt., Inc.*,
   623 F.3d 1290 (9th Cir. 2010) ..............................................................42

*Polich v. Burlington Northern, Inc.*,
   942 F.2d 1467 (9th Cir. 1991) ..............................................................40

*Porter v. Ollison*,
   620 F.3d 952 (9th Cir. 2010) ................................................................22

***Rogers v. United States***,
902 F.2d 1268 (7th Cir.1990) ..................................................................2

***Ryan v. Old Veteran Mining Co.***,
37 Idaho 625, 218 P. 381 (1923) ...........................................................28

***Smith v. Rader***,
31 Idaho 423, 173 P. 970 (1918) .............................................. 24, 28, 29

***Smith v. Sperling***,
354 U.S. 91, 77 S.Ct. 1112 (1957) ........................................... 24, 26, 28

***Taylor v. Bell***,
185 Wn. App. 270, 287, 340 P.3d 951, 960 (2014),
*review denied*, 183 Wn.2d 1012, 352 P.3d 188 (2015).......................13

***Taylor v. Taylor***,
163 Idaho 910, 422 P.3d 1116 (2018) .....................................................7

***U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.***,
792 F.3d 1121 (9th Cir. 2015).................................................................21

***Verska v. Saint Alphonsus Reg'l Med. Ctr.***,
151 Idaho 889, 265 P.3d 502 (2011) .....................................................31

***Wait v. Leavell Cattle, Inc.***,
136 Idaho 792, 41 P.3d 220 (2001) ........................................................33

***Zener v. Velde***,
135 Idaho 352, 355-56,17 P.3d 296, 299-300 (2000) ..........................33

## STATUTES

**28 U.S.C. § 1332**....................................................................................1

**Idaho Code section 30-1-742 (1998)** .................................... 4, 33, 34, 55

**Idaho Code section 30-29-741 (2015)** ...................................... 3, 29, 55

**Idaho Code section 30-29-741 (2019)** ...................................... 3, 29, 55

**Idaho Code section 30-29-742 (2015)** .............................. 4, 12, 33, 34, 38, 39, 55

**Idaho Code section 30-29-742** (2019) ................................................. 4, 33, 34, 55

## OTHER AUTHORITIES

**1 Fed. Proc., L. Ed. § 1:211** (2019) .................................................................30

**13 FLETCHER CYC. CORP. § 5987.10** (2019 ed.) ...................................................25

**13 FLETCHER CYC. CORP. § 5997** (2019 ed.) .......................................................25

**13 FLETCHER CYC. CORP. § 6004** (2019 ed.) .......................................................25

**19 AM. JUR. 2D CORPORATIONS § 2052** (2019 ed.) ...............................................25

**9 Fletcher Cyc. Corp. § 4223.50** (2019) ............................................................33

**ABA Official Comment to Idaho Code section 30-1-742** ...................... 34, 37, 39

**Black's Law Dictionary** (11th ed. 2019) ...........................................................45

## RULES

**Fed. R. App. P. 4** ...................................................................................................2

**Fed. R. Civ. P. 12(b)(6)** .................................................................... 17, 22

**Fed. R. Civ. P. 56** ............................................................................... 44, 45

**Fed. R. Evid. 201** ........................................................................ 21, 22, 38, 45

# I. JURISDICTIONAL STATEMENT AND IDENTITY OF PARTIES

## A. There Is a Basis for the District Court's Jurisdiction.

Plaintiff-Appellant Dale L. Miesen ("Miesen"), a citizen of Texas, submits this Opening Brief against the defendants John D. Munding ("Munding"), Karen Munding, Munding, P.S. and Crumb & Munding, P.S. (collectively referred to as the "Munding Defendants"), who are all citizens of Washington, and the defendants AIA Services Corporation ("AIA Services") and AIA Insurance, Inc. ("AIA Insurance"), who are Idaho corporations and citizens of Idaho (collectively referred to as the "AIA Corporations").[1] (6 ER 1094-99.)

Accordingly, this district court has jurisdiction over the parties based on diversity of citizenship, and Miesen is seeking in excess of $1,000,000 in damages. **28 U.S.C. § 1332** (Add. 1-6). (2 ER 23-26 & 3 ER 1094-98.)

## B. There Is a Basis and Information Establishing this Court's Jurisdiction.

This Court has jurisdiction over this appeal because the trial court granted the Munding Defendants' Motion to Dismiss without prejudice, without granting Miesen leave to file an amended complaint, and directed the court clerk to "close this case." (1 ER 19-20.) *See McGuckin v. Smith*, 974 F.2d 1050, 1053-54 (9th Cir. 1992); *In Re Establishment Inspection of Skil Corp.*, 846 F.2d 1127, 1129 (7th

---

[1] No counsel has ever appeared for the AIA Corporations. (7 ER 1504.)

Cir.1988); *United States v. Lee*, 786 F.2d 951, 956 (9th Cir. 1986); *Herrington v. County of Sonoma*, 706 F.2d 938, 939 (9th Cir. 1983). Thus, Miesen is entitled appeal because the district court's order ended the lawsuit. Finally, the district court also dismissed Miesen's claims based on subject matter jurisdiction. *See Rogers v. United States*, 902 F.2d 1268, 1269 (7th Cir.1990). Accordingly, this Court has jurisdiction over this appeal.

### C. The Filing Dates Establish that this Appeal Is Timely.

On March 28, 2019, the trial court entered the order granting the Munding Defendants' Motion to Dismiss. (1 ER 1-20.) On March 30, 2019, Miesen filed his Notice of Appeal. (7 ER 1497-1499.) On April 1, 2019, Miesen filed an Amended Notice of Appeal (although it was not entitled as one). (7 ER 1500-1502.) Therefore, Miesen's appeal is timely. *See* **Fed. R. App. P. 4(a)(1)(A)**.

## II. ISSUES PRESENTED ON REVIEW

1. Did the district court err and abuse its discretion by dismissing Miesen's First Amended Complaint ("FAC") for lack of subject matter jurisdiction when the AIA Corporations were properly pleaded and aligned as defendants for Miesen's derivative claims and the district court failed to make a determination as to proper alignment when diversity would exist under any scenario?

2. Did the district court err and abuse its discretion by dismissing Miesen's FAC for allegedly failing to provide adequate pre-filing derivative demand letters

when the demand letters provided requested claims be filed against the Munding Defendants, the AIA Corporations declined to take action, and the directors of the AIA Corporations did not ask for clarification or additional information?

3.      Did the district court err and abuse its discretion by dismissing Miesen's FAC without granting him leave to amend when it did not find that permitting an amendment would be futile?

4.      Did the district court err and abuse its discretion by failing to take judicial notice as requested by Miesen, by refusing to consider Miesen's June 13, 2016 derivative demand letter attached to a previously filed declaration and by ruling that parties could not rely on previously filed declarations or affidavits?

5.      Should this Court decline to affirm on alternative grounds the dismissal of Miesen's claims based on the statute of limitations because the continuous representation rule tolls the statute of limitations and hold that Miesen's claims are not time barred under that rule?

## III.   ADDENDUM

Attached in an Addendum ("Add.") to this Brief are the following documents:[2] **(a)** 28 U.S.C.A. § 1332 (Add. 1-6); **(b)** Idaho Code section 30-29-741 (2015) (Add. 7); **(c)** Idaho Code section 30-29-741 (2019) (Add. 8); **(d)** Idaho Code

---

[2] A separate table of contents is also provided in the Addendum.

section 30-1-742 (1998) (Add. 9-14), which contains the ABA Official Comment; **(e)** Idaho Code section 30-29-742 (2015) (Add. 15); and **(f)** Idaho Code section 30-29-742 (2019) (Add. 16).

## IV. <u>STATEMENT OF THE CASE</u>

### A. <u>Factual Background.</u>

Miesen, a citizen of Texas, has owned 45,000 common shares of AIA Services during all relevant times (he paid approximately $500,000 for the shares and has not received a single penny in dividends or other compensation on those shares for over twenty years). (6 ER 1094-95, 1100-01.) The defendant John Munding is an attorney who has practiced law in Spokane, Washington through the law firm of the defendant Munding, P.S., and previously through the law firm of the defendant Crumb & Munding, P.S. (6 ER 1095-96.)

Miesen is asserting derivative claims on behalf of AIA Services and double derivative claims on behalf of AIA Services' wholly owned subsidiary the defendant AIA Insurance.[3] (6 ER 1098-99.) As established by the caption of the FAC, Miesen is the sole Plaintiff and the AIA Corporations are defendants. (6 ER 1091.) In fact, the FAC alleges that, since the directors and officers of the AIA Corporations have

---

[3] To the extent required for certain claims (e.g., ultra vires relief), Miesen has also pleaded limited direct claims "Plaintiff is bringing this action as a common shareholder and on behalf of AIA Services…" (6 ER 1098 ¶18.)

serious conflicts of interest (as described in detail in the FAC) and are antagonistic to the interests of Miesen (and the boards were not properly elected or seated), they could not be pleaded as nominal plaintiffs. (6 ER 1098-99, 1115-27.)

Despite not having met the obligations owed to the Series A Preferred Shareholder and the Series C Preferred Shareholders of AIA Services (which are comprised of a number of former employees owed over $1,500,000 in their 401(k) retirement accounts), R. John Taylor ("John Taylor") and other purported directors and officers of the AIA Corporations had AIA Services guarantee a $5 million loan for two other entities that they owned and controlled, CropUSA Insurance Agency, Inc. ("CropUSA Agency") and CropUSA Insurance Services, LLC ("CropUSA Services") (collectively "CropUSA Entities"), neither of which was a subsidiary of the AIA Corporations (the former was stolen from AIA). (6 ER 1104.)

The loan was subsequently increased to $10 million and both AIA Corporations guaranteed the full $10 million, despite being prohibited from doing so under AIA Services' amended articles of incorporation and because the board of directors not being properly seated and elected, among other reasons (including violating the Bylaws). (6 ER 1105-06.) The hard money loan carried an interest rate of 18.5% with a default rate of 24%. (*Id*.) The original $5 million guarantee and the subsequent increase of the guarantee to $10 million were concealed from AIA

Services' innocent shareholders and Donna Taylor, who was the Series A Preferred Shareholder entitled to appoint a director under AIA Services' amended articles of incorporation, which such right was denied by John Taylor and others. (6 ER 1104-06.)

More specifically, Donna Taylor, the Series A Preferred Shareholder, was the recipient of special rights and preferences under AIA Services' amended articles of incorporation. (6 ER 1101, 1162-68.) Specifically, under AIA Services' amended articles of incorporation, the AIA Corporations were prohibited from guaranteeing loans for any entities other than wholly owned subsidiaries unless one of the limited exceptions applied:

> The corporation will not, and will not permit any of its Subsidiaries to, directly or indirectly, create, incur, assume, guaranty or otherwise become or remain directly or indirectly liable with respect to, any Indebtedness, except… [listing a number of exceptions that did not apply to the GemCap guarantees or Settlement Agreement]

(6 ER 1162-64 § 4.2.9(c).) None of the exceptions applied to the $10 million loan or the subsequent Settlement Agreement (7 ER 1383-1410), as specifically alleged in the FAC. (*E.g.*, 6 ER 1123-24.) AIA Services was also required to honor Donna Taylor's right to appoint a director pursuant to the articles of incorporation. (6 ER 1162 § 4.2.8.) However, John Taylor and the other insiders have refused to honor Donna Taylor's appointment of a director (because that director would never allow

the malfeasance to occur), including during time that the Munding Defendants have represented the AIA Corporations. (4 ER 1101-02.) The restrictions under the articles of incorporation could not be waived unless Donna Taylor consented and the articles of incorporation were amended or the shareholders consented, as confirmed more recently by the Idaho Supreme Court. (6 ER 1168 § 4.2.12.) *Taylor v. Taylor*, 163 Idaho 910, 422 P.3d 1116 (2018) (holding, among other things, that Donna Taylor's consent was not sufficient to modify her redemption contract and shareholder approval was also required, although the Idaho Supreme Court enforced her Letter Agreements for reasons that do not apply here).[4]

After CropUSA Agency and CropUSA Insurance failed to repay the $10 million loan, the hard money lender GemCap filed suit against John Taylor (he also guaranteed the loan, which created yet another conflict of interest), the AIA Corporations, the CropUSA Entities and others in California federal court ("California Lawsuit"). (6 ER 1107; Dkt. 11-2 at 8-57.) GemCap's claims included fraud and conversion against John Taylor, along with breach of guarantees against

---

[4] That appeal also confirmed that Donna Taylor, the Series A Preferred Shareholder of AIA Services, is owed the principle sums alleged in the FAC, and is the majority and controlling Series A Preferred Shareholder entitled to appoint a director and refuse to consent to any violations of the restrictions under the articles of incorporation, despite John Taylor having since unlawfully issued shares to himself. (6 ER 1101 ¶ 23.)

John Taylor and the AIA Corporations, which created yet additional conflicts for John Taylor. (*Id.*) John Taylor contacted the Munding Defendants to purportedly represent all of the defendants in the California Lawsuit, and the Munding Defendants agreed to do so without insisting on the AIA Corporations retaining their own independent counsel. (6 ER 1107-08.) During the time that the Munding Defendants have represented the AIA Corporations (which continues to this day because they have never withdrawn), the Munding Defendants have known that the AIA Corporations were not being properly operated and their boards of directors was not properly seated or elected (and the articles of incorporation and bylaws were not being complied with).[5] (6 ER 1100-04.)

> After appearing as counsel for AIA in the Lawsuit, the [Munding] Defendants were specifically advised that AIA's guarantees were unauthorized and unlawful because they, among other things, violated AIA's amended articles of incorporation and bylaws and AIA received no consideration for them. After appearing as counsel for AIA in the Lawsuit, [the Munding] Defendants were also specifically advised that any settlement would be unauthorized and unlawful for the same reasons. Despite having such knowledge and upon information and belief, the [Munding] Defendants failed to take any action to extricate AIA from any liability under the guarantees, other than at least one effort to settle the case without any liability to AIA (which was an admission by the [Munding] Defendants that AIA had no liability under the guarantees).

_____

[5] It is beyond perplexing why the Munding Defendants did not require the boards to be properly elected and seated as a fundamental condition of representing the AIA Corporations.

(6 ER 1108-09 ¶ 40.) On or about the first day of trial in the California Lawsuit, the Munding Defendants engineered a tentative settlement; however, no prior disclosure or shareholder approval was sought or obtained even though any settlement would be ultra vires and/or illegal for violating AIA Services' amended articles of incorporation and bylaws, as described in detail in the FAC. (6 ER 1109-10.)

Although they had actual knowledge that any settlement was not authorized on behalf of the AIA Corporations, the Munding Defendants continuing negotiating and concluded a final settlement agreement ("Settlement Agreement"), despite John Taylor's various conflicts of interest (as described in detail in the FAC). (6 ER 1110-11; 7 ER 1383-1410.) The Settlement Agreement purported to obligate the AIA Corporations and others to pay over $12 million to GemCap and contained unlawful provisions, transferred AIA Services' former headquarters to GemCap, improperly assigned legal malpractice claims and unlawfully prevented any of the AIA Corporations from filing bankruptcy.[6] (6 ER 1111-12, 7 ER 1383-1410.) No shareholder consent was sought or obtained from AIA Services' shareholders or the Series A Preferred Shareholder, Donna Taylor, to authorize entry into the Settlement

---

[6] The Settlement Agreement was unauthorized and illegal for a number of reasons, including because it was prohibited by AIA Services' amended articles of incorporation and illegally assigned malpractice claims and prevented the AIA Corporations from filing for bankruptcy. (*E.g.*, Dkt. 11-2 at 109-117, 245-49.)

Agreement. (6 ER 1112.)

After Miesen and certain other shareholders learned of the Settlement Agreement, Donna Taylor sought to intervene in the California Lawsuit to set aside the Settlement Agreement or have it declared illegal; however, instead of welcoming the intervention to resolve the illegality issue, the Munding Defendants successfully opposed Donna Taylor's intervention. (6 ER 1112-13; Dkt. 11-2 at 58.) Donna Taylor appealed; however, once again the Munding Defendants opposed Donna Taylor and this Court affirmed the denial of her intervention on February 15, 2017 (further establishing that the Munding Defendants continued representing the AIA Corporations through the entry of the mandate on that appeal on March 9, 2017). (6 ER 1114-15 ¶ 54; 3 ER 469-516; 6 ER 1001-1090; Dkt. 11-2 at 75-283.) *GemCap Lending I, LLC v. Taylor*, 677 Fed.Appx. 351 (9th Cir. 2017).

> Because the [Munding] Defendants (or at least John Munding, Crumb & Munding, P.S. and Munding, P.S.) continue to purportedly represent AIA in the Lawsuit and continue to have opportunities to rectify their wrongs (at least in part) because there is no final judgment in the Lawsuit, all applicable statutes of limitations continue to be tolled (and also because the [Munding] Defendants continue to conceal facts from AIA).

(6 ER 1115 ¶ 55.) The above-quoted allegations are further supported by the dockets and subsequent filings in the California Lawsuit as recently as an order issued by the court on October 29, 2019, which establishes that the Munding Defendants continue

representing the AIA Corporations and they have not withdrawn as counsel. (3 ER 469-516; 6 ER 1001-1079; Dkt. 11-2 at 8-74.) And, despite the filing of the instant lawsuit on August 21, 2018 (2 ER 21), the Munding Defendants continued representing the AIA Corporation. (3 ER 469-516; Dkt. 11-2 at 8-74.)

In sum, the FAC alleges with specificity that the Munding Defendants engaged in a pattern of intentional tortious conduct, including placing their interests in earning fees and assisting John Taylor above the best interests of the AIA Corporations in having unconflicted and loyal counsel in the California Lawsuit, failing to obtain authorized conflict waivers, violating numerous Rules of Professional Conduct, assisting the directors and officers of the AIA Corporations in engaging in breaches of fiduciary duties and other torts, and participating in the AIA Corporations being unlawfully operated for the benefit of the directors and officers guilty of unlawfully taking the AIA Corporations' funds and assets (including by intentionally violating the articles of incorporation and bylaws).[7] (6 ER 1094-1197.)

Consequently, Miesen provided two written demands to the purported boards of directors of the AIA Corporations to take action against the Munding Defendants

---

[7] Since the district court did not reach the merits of Miesen's claims, it is unnecessary for him to discuss in detail all of the various aspects of the claims against the Munding Defendants as set forth in the FAC.

(and others) more than 90 days prior to filing the instant lawsuit as required by Idaho Code section 30-29-742 (2015) (those demand letters also addressed other defendants in a lawsuit in Idaho). (6 ER 1131-35; Dkt. 11-2 at 390-473.) The first ten-page demand letter is in the record and it contains the defined terms quoted in part in the FAC (although the district court did not consider it and that letter addressed defendants in another pending lawsuit as well). (2 ER 180-90; Dkt. 11-2 at 390-473.) The AIA Corporations, through their sole purported director, John Taylor, failed to respond to the first derivative demand letter within 90 days, but responded to the second letter and rejected the demand letters. (6 ER 1135; Dkt. 11-2 at 388-89.) On December 16, 2019 (prior to filing this Brief), Miesen requested this Court to take judicial notice of a number of public records which included, among other things, Miesen's two demand letters (including the defined terms) and John Taylor's letter declining to assert claims against the Munding Defendants.[8] (Dkts. 11-1, 11-2 at 361-89.)

---

[8] In that case, the court ruled that the two demand letters were more than sufficient and that John Taylor had failed to seek more information or seek clarification (consistent with the ABA Comments). *Miesen v. Henderson*, No. 1:10-cv-00404-CWD, 2017 WL 1458191, at *7 (D. Idaho April 21, 2017) (Dkt. 11-2 at 361-89.)

This lawsuit followed[9] (1 ER 21-101.) Miesen made it clear in his FAC that he had retained a reputable expert witness, Professor Richard McDermott, to testify against the Munding Defendants.[10] (6 ER 1128.) Miesen also requested that any recovery in the instant lawsuit be "used to pay lawful creditors and the remaining funds to be distributed to the Series A Preferred Shareholder (Donna Taylor), the Series C Preferred Shareholders (the innocent former employees in the 401(k) Plan owed over $1,500,000) and then to the innocent common shareholders." (6 ER 1138.)

**B. Procedural History.**

On August 21, 2018, Miesen filed his Complaint in this action, with copies of AIA Services' amended articles of incorporation and bylaws attached to the Complaint. (2 ER 21-101.)

On September 18, 2018, the Munding Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(1), (3) & (6). (2 ER 102-123.) They also submitted

---

[9] Miesen is, however, seeking to mitigate damages by having the Settlement Agreement (7 ER 1383-1410) set aside and/or declared illegal in U.S. District Court of Idaho, and that action is pending. (6 ER 1129 ¶ 75; Dkt. 11-2 at 5 ¶ 15, at 461-64.)

[10] "Indeed, Division One of the Washington Court of Appeals recently held that Professor McDermott was 'eminently qualified to testify as an expert' in Washington. *Taylor v. Bell*, 185 Wn. App. 270, 287, 340 P.3d 951, 960 (2014), *review denied*, 183 Wn.2d 1012, 352 P.3d 188 (2015)." (6 ER 1128 ¶ 74.)

a declaration from one of their attorneys (Mr. Louvier) and a declaration that was previously filed in another related lawsuit (Ms. Foster),[11] which collectively contained 42 exhibits attached to them. (2 ER 124-235; 3 ER 236-521; 4 ER 522-710; 5 ER 711-991; 6 ER 992-1090.) While counsel appeared for the Munding Defendants, no counsel ever appeared for the other defendants.[12]

On October 9, 2018, Miesen filed his FAC, which, once again, had copies of AIA Services' amended articles of incorporation and bylaws attached to it. (6 ER 1091-1197.) Miesen asserted claims against the Munding Defendants for: (a) legal malpractice; (b) breaches of fiduciary duties; (c) violations of Washington's Consumer Protection Act; (d) aiding and abetting in breaches of fiduciary duties and fraud; (e) fraudulent concealment; (f) equitable indemnification; and (g) declaratory relief. (2 ER 1138-53.)

In an abundance of caution, later that same evening on October 9, 2018, Miesen also filed a Motion to Extend Time to Respond to Defendants' Motion to Dismiss because the Munding Defendants would not acknowledge that the FAC

---

[11] The undersigned has never seen an attorney file a declaration from a different lawsuit in a stand-alone docket entry as if that declaration has been prepared, signed and filed in the lawsuit. As seen from the caption for Ms. Foster's declaration, it was previously filed in a different lawsuit in Idaho and she is counsel for GemCap Lending, who is not a party to the instant case. (3 ER 236.)

[12] The John or Jane Does I-III were never identified or served. (7 ER 1503-09.)

superseded the Complaint nor would they agree to withdraw their motion or stipulate to an extension of time to determine the issue. (6 ER 1198-1210.) While the undersigned did not have sufficient time to research the issue on October 9, 2018, Miesen asserted in his Motion:

> To the extent that the filing of the Plaintiff's First Amended Complaint (ECF 5 No. 10) does not render the Defendants' motion moot (it seems that they would, at 6 a minimum, want to amend the motion to address other claims), the Plaintiff 7 respectfully requests that the time for him to respond to the Defendants' Motion to 8 Dismiss (ECF No. 7) be extended until November 9, 2018.

(6 ER 1202.) On October 12, 2018, the Munding Defendants vehemently opposed Miesen's Motion to Extend Time (although they did not oppose a short extension)— without ever addressing or acknowledging whether their Motion to Dismiss had been rendered moot by the filing of the FAC. (6 ER 1211-1275.) On October 12, 2018, the district court admonished Miesen's counsel for allegedly waiting until the date the response was due to file the motion and for not also seeking to expedite the decision, and granted a short extension of time—without addressing whether the FAC rendered the Motion to Dismiss moot. (7 ER 1276-79.)

On October 12, 2018 (one day after what the undersigned reviewed the district court's order), Miesen filed a Response to the Motion to Dismiss, which contained authority from this Court that the Motion to Dismiss was rendered moot through the filing of the FAC (the undersigned also apologized to the district court for not finding

the authority earlier). (7 ER 1280-88.) On October 23, 2018, the Munding Defendants submitted a reply and conceded that the Motion to Dismiss was rendered moot as Miesen's counsel had previously believed. (7 ER 1289-91.) The district court entered a text order denying the Motion to Dismiss as moot. (1 ER 9.)

On October 23, 2018, the Munding Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(1), (3) & (6) arguing that Miesen's FAC should be dismissed because: (a) Miesen's derivative demand letter was not sufficient; (b) diversity jurisdiction does not exist because the AIA Corporations were allegedly on both sides of the "v."; (c) Miesen's claims are barred by res judicata; (d) California law should apply and Miesen's malpractice claims are barred by the California statute of limitations; (e) Miesen's equitable claims must be dismissed; (f) Miesen's aiding and abetting claims were not viable under Washington law; (g) Miesen's request for declaratory relief constituted a request for an advisory ruling; (h) Miesen failed to properly plead fraudulent concealment; and (i) Miesen's Consumer Protection Act claims. (7 ER 1292-1314.) They also submitted another declaration (Mr. Munding) in support of that Motion, with five more exhibits. (7 ER 1315-38.)

On November 13, 2018, Miesen filed a Motion to Strike certain of the three declarations and certain of the 47 exhibits attached to those declarations because

they were not appropriate to consider under Rule 12(b)(6) and based on other defects (including the filing of a declaration from another lawsuit as if it was signed and filed for this lawsuit). (7 ER 1339-51.) On that same day, Miesen also filed a Response to the Motion to Dismiss and the declaration of the undersigned, with two exhibits attached to it (including the Settlement Agreement referenced in the FAC). (7 ER 1352-1410.) On November 21, Miesen filed an Errata re: Response to Motion to Dismiss. (7 ER 1411-13.) On November 27, 2018, the Munding Defendants filed a Response to Miesen's Motion to Strike. (7 ER 1414-26.) On November 27, 2018, the Munding Defendants filed a Reply in Support of the Motion to Dismiss. (7 ER 1427-39.) On December 4, 2018, Miesen filed a Reply in Support of the Motion to Strike. (7 ER 1440-52.)

On February 8, 2019, the district court held a telephonic hearing on the Munding Defendants' Motion to Dismiss and Miesen's Motion to Strike. (7 ER 1453-96.) On March 28, 2019, the district court entered its Order Granting in Part Defendant's (sic) Motion to Dismiss and Dismissing Plaintiff's Claims Without-Prejudice ("Order"), which also granted Miesen's Motion to Strike in part. (1 ER 1-20.) Without explaining how alignment would be proper in this derivative action or what information was required that was not contained in Miesen's two demand letters, the district court judge dismissed Miesen's claims:

The Court agrees that Plaintiff's derivative demands, as replicated in Plaintiff's amended complaint, do not sufficiently describe the "suitable action" to satisfy notice under Idaho Code § 30-29-742, that Plaintiff demanded that the AIA Entities take action on their own behalf. Each and every passage of the demand letters that Plaintiff included in his amended complaint, ostensibly to show statutory standing under Rule 23.1, states claims in terms of "all possible claims" or similarly generic, conclusory, language, rather than describing with particularity the claims for relief sought and the factual bases for those claims as required by Rule 23.1's pleading requirements…

Plaintiff's amended complaint fails to provide specific information from which the Court can conclude that Plaintiff has established statutory standing under Rule 23.1.

*          *          *

Plaintiff argues that diversity exists in this matter regardless of how the corporation is aligned. However, a complaint that does not allege with sufficient specificity information to determine proper alignment is untenable. Therefore, the Court finds that Plaintiff's allegations are insufficient to determine proper alignment as a matter of law and to establish jurisdiction.

Subject matter jurisdiction is a threshold issue. Although the Court has serious concerns going to the merits of Plaintiff's claims, particularly whether the legal malpractice claim can survive the challenge of an expired statute of limitation or whether the legal malpractice claim is subject to the Washington Consumer Protection Act, the Court does not reach the numerous other arguments raised by Defendants in their motion to dismiss because Plaintiff has not established subject matter jurisdiction.

At this stage, having determined that subject matter jurisdiction has not been established, dismissal without prejudice is appropriate. …

The Munding Defendants' Motion to Dismiss, **ECF No. 19**, is **GRANTED IN PART** and **DENIED IN PART.** Plaintiff's claims are **dismissed without prejudice** for insufficient pleading regarding federal jurisdiction and statutory standing to raise derivative claims.

- 18 -

> IT IS SO ORDERED. The District Court Clerk is directed to enter this
> Order and provide copies to counsel, and **close this case**.

(1 ER 15-19 (emphasis in original).) In sum, the district court dismissed Miesen's

claims without prejudice and without leave to amend, stated that Miesen could re-

file the claims in a new lawsuit and directed the clerk to "close this case." (1 ER 19-

20.) The district court's dismissal on jurisdiction grounds was based on a "facial"

attack on the FAC before an Answer was filed by any of the defendants. (1 ER 11,

16-19.) On March 28, 2019 (that same day), the clerk closed the case. (7 ER 1503.)

On March 30, 2019, Miesen timely filed a Notice of Appeal. (7 ER 1497-99.)

On April 1, 2019, Miesen timely filed an Amended Notice of Appeal. (7 ER 1500-

1502.) This appeal followed. On December 16, 2019 (prior to the filing of this Brief),

Miesen filed a Motion for Judicial Notice to submit additional dockets and

documents, including, for the purpose of establishing that that Munding Defendants'

representation of the AIA Corporations continue and that they have not taken any

action to extricate the AIA Corporations from being forced to pay the over $12

million, plus accrued interest, allegedly owed pursuant to the terms of that

Settlement Agreement. (Dkts. 11-1 & 11-2; 7 ER 1383-1410.)

# V.  <u>SUMMARY OF THE ARGUMENT</u>

1.    The district court erred and abused its discretion by dismissing Miesen's FAC for lack of subject matter jurisdiction when the AIA Corporations were properly pleaded and aligned as nominal defendants because the FAC asserted that their officers and directors were antagonistic for having committed substantial tortious conduct and malfeasance against the AIA Corporations and for rejecting Miesen's demands to take legal action. In addition, the district court erred and abused its discretion by failing to determine proper alignment of the AIA Corporations because diversity would exist irrespective of whether they were aligned as defendants or plaintiffs.

2.    The district court erred and abused its discretion by dismissing Miesen's FAC for allegedly failing to provide adequate pre-filing derivative demand letters when the two demand letters provided adequate information requesting the AIA Corporations pursue claims against the Munding Defendants, the AIA Corporations declined to file suit, and the directors of the AIA Corporations did not ask for clarification or more information in response to both demand letters.

3.    The district court erred and abused its discretion by dismissing Miesen's FAC without granting him leave to amend when it did not find permitting amendment would be futile and provided no other valid reasons why leave to amend

should be denied.

4. The district court erred and abused its discretion by failing to take judicial notice of four public records as requested by Miesen as required by Fed. R. Evid. 201, by refusing to consider Miesen's June 13, 2016 derivative demand letter, and by ruling that the parties could not rely upon or cite to previously filed declarations or affidavits simply because they were directed at a prior motion.

5. This Court should decline to affirm on alternative grounds through the dismissal of Miesen's legal malpractice, breach of fiduciary duty and other applicable claims based on the statute of limitations because the continuous representation rule tolled the statute of limitations. This Court should also hold that Miesen's claims are not time barred under the continuous representation rule.

## VI. <u>ARGUMENT</u>

### A. <u>Standards of Review</u>.

A dismissal for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) are reviewed de novo. ***U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.***, 792 F.3d 1121, 1126 (9th Cir. 2015) (Rule 12(b)(1)); ***Dougherty v. City of Covina***, 654 F.3d 892, 897 (9th Cir. 2011) (Rule 12(b)(6)).

> [W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), "[r]eview is limited to the complaint." All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal

sufficiency of the allegations under Rule 12(b)(6). …

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."… There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion. First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and "the plaintiff's complaint necessarily relies" on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of "matters of public record." We review a district court's decision to take judicial notice for abuse of discretion.

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citations omitted).

Court dockets in other courts may also be judicially noticed. *Porter v. Ollison*, 620 F.3d 952, 954-955 (9th Cir. 2010). However, a court may only take judicial notice of the existence of a document, but not the truth of the facts recited therein. *Lee*, 250 F.3d at 690.

As to any discretionary issues (including those discussed below), a trial court abuses its discretion when its decision is based on clearly erroneous factual findings or an incorrect legal standard. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 505 (9th Cir. 1997).

This diversity action is governed by Washington substantive law and federal procedural law. *Hay v. American Safety Indemnity Co.*, 270 F.Supp.3d 1252, 1257

(W.D. Wash. 2017). If any state law issues are unsettled, this Court must predict how the state's highest court would decide the question. ***Id***.

**B. The District Court Erred by Dismissing Miesen's Claims For Lack of Subject Matter Jurisdiction Because the AIA Corporations Were Properly Aligned as Defendants Because the FAC Pleaded Significant Facts that Miesen Is Antagonistic to the AIA Corporations Based on Serious Conflicts of Interest, Tortious Conduct and Malfeasance Alleged Against the Directors and Officers and Their Refusal to Take Action.**

**1. Additional Standard of Review.**

A district court's determination on diversity jurisdiction is reviewed de novo.

***Gonzales v. CarMax Auto Superstores, LLC***, 840 F.3d 644, 648 (9th Cir. 2016).

**2. The District Court Erred Because Miesen Properly Pleaded and Named AIA Services and AIA Insurance as Defendants.**

The district court erred and abused its discretion by dismissing Miesen's FAC based on its incorrect findings that Miesen's allegations were "conclusory" and "were insufficient to determine proper alignment as a matter of law and to establish jurisdiction." (1 ER 17-18.) This was an error of law and an abuse of discretion because Miesen's FAC provided pages and pages of detailed factual allegations establishing antagonism thereby requiring the AIA Corporations to be properly named as defendants and they declined to file suit. (6 ER 1098-1138.) Thus, this Court should reverse and reinstate Miesen's FAC because Miesen properly named the AIA Corporations as defendants because their directors and officers are antagonistic to Miesen's interests (and other minority shareholders).

- 23 -

It is well-settled among the U.S. Supreme Court, this Court, the Idaho Supreme Court, and commentators that, when the directors and officers are antagonistic to the shareholder bringing a derivative action, the corporation is properly named as a defendant and the matter is determined from the face of the pleadings. *Smith v. Sperling*, 354 U.S. 91, 77 S.Ct. 1112 (1957); *Swanson v. Traer*, 354 U.S. 114, 77 S.Ct. 1116 (1957); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234-35 (9th Cir. 2008) ("A corporation is generally antagonistic to a shareholder plaintiff where 'management is aligned against the stockholder and defends a course of conduct which he attacks,' or merely where "management—for good reasons or for bad—is definitely and distinctly opposed to the institution of [the derivative] litigation…'"); *Smith v. Rader*, 31 Idaho 423, 173 P. 970, 971 (1918) ("The complaint presents a defect of parties, in that the corporation is not made a defendant."); **13 FLETCHER CYC. CORP. § 6004** (2019 ed.) ("The complaint in a derivative proceeding is generally brought in the name of the plaintiff shareholder…A corporate defendant may be named in a shareholder's derivative action as a party defendant even where no wrongdoing by the corporate entity is alleged.") (footnotes and citations omitted); **13 FLETCHER CYC. CORP. § 5987.10** (2019 ed.) ("A corporation is aligned as a plaintiff in a derivative proceeding, unless it is controlled by interests antagonistic to the shareholder. Antagonism between a

shareholder and the corporation for purposes of alignment exists where it appears that the shareholder and those who manage the corporation are completely and irrevocably opposed on a matter of corporate practice and policy. This determination should be based on the face of the pleadings and the nature of the controversy.") (footnotes and citations omitted); **13 FLETCHER CYC. CORP. § 5997** (2019 ed.) ("…the corporation should be aligned as a defendant whenever management is antagonistic toward the interests of the plaintiff.") (footnote and citation omitted); **19 AM. JUR. 2D CORPORATIONS § 2052** (2019 ed.) ("A corporation [in a] shareholders' derivative action…is nevertheless treated as a true defendant for purposes of diversity jurisdiction.") (footnote and citation omitted).

Here, the district court erred and abused its discretion in its facial attack analysis on Miesen's FAC because Miesen was properly aligned and named as the plaintiff, and the AIA Corporations were properly aligned and named as defendants. (1 ER 11, 16-19.) Miesen's FAC undisputedly pleaded sufficient factual basis to establish that the AIA Corporations must be named as defendants because the interests of their so-called directors and officers are antagonistic to Miesen's interests and they had rejected his demands. (6 ER 1098-1138.) Those allegations, contrary to the district court's erroneous findings, were not conclusory, but provided detailed allegations supporting an antagonistic finding. (*Id*.) For example, the

following are examples of adequate predicates to find the AIA Corporations' directors and officers were antagonistic, which required the AIA Corporations to be named as defendants:

- The FAC alleges pages and pages of factually specific allegations regarding the intentional breaches of fiduciary duties, fraud, other torts and malfeasance committed by the directors and officers of the AIA Corporations that show they are aligned against the interests of Miesen and other preferred and common shareholders of AIA Services. (6 ER 1099-1138.) *Smith*, 354 U.S. at 95-97. In fact, Miesen asserts that the Munding Defendants aided and abetted John Taylor and others in the breaches of fiduciary duties and fraud. (6 ER 1145-47.) The Munding Defendants and the AIA Corporations have never filed an Answer, so the district court should have given "dispositive weight to allegations in [Miesen's] derivative [FAC]." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1236.

- The AIA Corporations' purported director, John Taylor, rejected both of Miesen's derivative demand letters and declined to file suit against the Munding Defendants. (6 ER 44-45.); Dkt. 11-2 at 375-388.) Whether John Taylor's decision was sincere (it was not), is irrelevant because the AIA Corporations have refused to take action against the Munding Defendants and are, therefore, hostile and antagonistic to the enforcement of Miesen's claims. *Smith*, 354 U.S. at 95-97.

Indeed, John Taylor's "attitude" in refusing to take action "need not be sinister" and may be "sincere" but the end result is that antagonism is present. *Id.* at 97.

- In looking beyond the factual allegations in the FAC to ascertain the nature of Miesen's claims, Miesen is alleging that the Munding Defendants unlawfully and tortiously represented the AIA Corporations in the California Lawsuit that resulted in an unlawful Settlement Agreement[13] obligating the AIA Corporations to pay over $12 million, plus interest, to GemCap and that those actions were taken in to assist (aid and abet) the directors and officers in placing their interests above the interests of the AIA Corporations and committing torts against the AIA Corporations (including intentionally violating the articles of incorporation and bylaws and by failing to properly elect and seat directors). (6 ER 1094-1197; 7 ER 1383-1410; Dkt. 11-2 at 85-283, 390-472.) Indeed, the unlawful Settlement Agreement engineered with the participation of the Munding Defendants and Miesen's litigation in Idaho asserting the unlawfulness and illegality of that Agreement further evidences antagonism. (7 ER 1383-1410; Dkt. 11-2 at 390-473.) Thus, the allegations are more than adequate to establish antagonism. *Smith*, 354

---

[13] One reason that John Taylor and the others oppose the challenge to the Settlement Agreement and this lawsuit is because they wish to benefit from the AIA Corporations' property that was transferred and sold to GemCap to reduce the over $12,000,000 owed on the Settlement Agreement thereby reducing the sums owed by the other parties, including John Taylor.

U.S. at 95-97.

- • In sum, the AIA Corporations and their directors, officers and management are opposed to this derivative action, as undisputedly established by the factual allegations in the FAC. (6 ER 1091-1197.) Based on the factual allegations before this Court, the AIA Corporations must be defendants.

Notably, Donna Taylor (who was formally a co-plaintiff with Miesen (Dkt. 11-2 at 5 ¶ 15)) named the AIA Corporations as defendants on a prior successful appeal before this Court and before the district court in Idaho for a pending lawsuit asserting antagonistic positions as a basis to name the AIA Corporations as defendants. (Dkt. 11-2 at 284, 390, 474, 532.) Those courts took no issue with the AIA Corporations being named as defendants and there were no issues with jurisdiction.

As to Miesen, Idaho law is clear that he must be the plaintiff, as alleged in the FAC. (6 ER 1091.) **Idaho Code section 30-29-741** (2015) (Add. 7); **Idaho code section 30-29-741** (2019) (Add. 8); *Smith v. Rader*, 31 Idaho 423, 173 P. 970, 971 (1918); *Ryan v. Old Veteran Mining Co.*, 37 Idaho 625, 218 P. 381, 383 (1923). There can be no dispute that Miesen is rightfully aligned as the plaintiff.

Thus, while the district court correctly stated the law, it incorrectly applied the facts to the law, its findings were not supported by the well-pleaded allegations

in the FAC (which must be accepted as true), and it failed to recognize the nature of the controversy that Miesen is suing the Munding Defendants because they committed torts against the AIA Corporations and assisted management in committing torts—which undisputedly established antagonism thereby requiring the AIA Corporations to be named as defendants. Accordingly, this Court should reverse and reinstate the FAC because the AIA Corporations were correctly aligned.

### 3. The District Court Erred and Abused Its Discretion by Not Determining Alignment of the AIA Corporations Prior to Dismissing Miesen's FAC.

The district court separately erred and abused its discretion by failing to make a determination as to align the AIA Corporations as defendants or plaintiffs—either way, diversity jurisdiction would still exist and the case would proceed. Instead, the district court erred by refusing to make that determination and further erred by dismissing the case. (1 ER 11, 16-20 (A. 134, 139-43).) Thus, if this Court does not reverse as requested because the AIA Corporations were properly named as defendants, this Court should separately reverse because the AIA Corporations must be defendants or plaintiffs and diversity jurisdiction exists under either scenario.

Courts have a duty in diversity cases to realign the parties according to their interests. *Develop. Finance Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 159 (3d Cir. 1995); *In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1234-36. *C.f. Smith*, 31 Idaho 423, 173 P. at 971 ("[I]t was the duty of the court to bring

[the corporation] into the action, to the end that its rights be fully determined.").

> It is the duty of the court to look beyond the pleadings and realign or rearrange the parties according to their proper sides or real interests in the dispute, looking beyond the formal arrangement made by the pleadings, and realigning the parties according to the principal purpose of the suit and the primary and controlling matter in dispute.

**1 Fed. Proc., L. Ed. § 1:211** (2019) (footnotes and citations omitted).

Here, since the district court's dismissal on jurisdiction grounds was based on a "facial" attack on the FAC and before an Answer was filed by any of the defendants (1 ER 11, 16-19), the district court erred and abused its discretion by failing to give dispositive weight to Miesen's FAC (and the documents referenced in it) and consider the interests of the parties to determine proper alignment. (6 ER 1091-1197; 7 ER 1383-1410.) ***In re Digimarc Corp. Derivative Litig.***, 549 F.3d at 1234-36. Had the district court properly conducted such an analysis, it would have readily concluded that the AIA Corporations must be aligned as defendants. At worst for Miesen, the district court could erroneously rule that the AIA Corporations should be aligned as nominal plaintiffs—but the lawsuit would not have been dismissed because diversity would exist under either scenario. (6 ER 1091, 1094-98 (A. 17, 20-24).)

Accordingly, the district court erred and abused its discretion by determining whether the AIA Corporations should be aligned as defendants or plaintiffs. Since

the Munding Defendants are all citizens of Washington, the AIA Corporations (citizens of Idaho) and Miesen (a citizen of Texas), diversity jurisdiction exists in this lawsuit irrespective of whether the AIA Corporations are aligned as defendants or plaintiffs. Thus, the district court failed to discharge its duty to address alignment and abused its discretion and erred by failing to properly address this issue.

### C. The District Court Erred and Abused Its Discretion by Determining that Miesen's Derivative Demands Were Insufficient.

#### 1. Additional Standard of Review.

Idaho law governs derivative demands. ***Kamen v. Kemper Financial Services, Inc.***, 500 U.S. 90, 95-107, 111 S.Ct. 1711, 1716-1722 (1991). "The interpretation of a[n] [Idaho] statute is a question of law that [is] review[ed] *de novo*." ***Bright v. Maznik***, 162 Idaho 311, 314, 396 P.3d 1193, 1196 (2017). Such interpretation must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. ***Verska v. Saint Alphonsus Reg'l Med. Ctr.***, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011).

#### 2. The District Court Erred and Abused Its Discretion by Dismissing Miesen's Claims Because His Two Derivative Demand Letters Were More Than Sufficient and the AIA Corporations Never Requested Any Clarification or Further Information in Response to the Letters.

The district court erred and abused its discretion by dismissing Miesen's claims because his two derivative demand letters "do not sufficiently describe the

'suitable action" to satisfy notice under Idaho Code § 30-29-742" and that Miesen's FAC "fails to provide specific information from which the Court can conclude that [Miesen] has established statutory standing under Rule 23.1." (6 ER 15-16.) Miesen's two derivative demand letters were more than adequate to meet the plain meaning "of written demand" required under Idaho law and the AIA Corporations' boards of directors failed to ask for any clarification or additional information. Thus, this Court should reverse and reinstate Miesen's FAC.

Idaho state law governs the sufficiency of derivative demands involving two Idaho corporations. (6 ER 1097-98.) **Idaho Code section 30-1-742** (1998) (Add. 9-14); **Idaho Code section 30-29-742** (2015) (Add. 15); **Idaho Code section 30-29-742** (2019) (Add. 16); ***McCann v. McCann***, 138 Idaho 228, 234-235, 61 P.3d 585, 591-592 (2002); ***Kamen***, 500 U.S. at 95-107, 111 S.Ct. at 1716-1722; **9 Fletcher Cyc. Corp. § 4223.50** (2019) ("The internal affairs doctrine provides that internal matters of corporate governance are governed by the law of the state of incorporation."). The pertinent portion of Idaho Code section 30-29-742 (2015) provides:

> No shareholder may commence a derivative proceeding until:
>
> (1) A written demand has been made upon the corporation to take suitable action; and

(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation…

**Idaho Code section 30-29-742** (2015) (Add. 15).

The Idaho Supreme Court looks to the ABA Comments when interpreting Idaho Code. ***Wait v. Leavell Cattle, Inc.***, 136 Idaho 792, 797, 41 P.3d 220, 225 (2001). *C.f. **Zener v. Velde***, 135 Idaho 352, 355-56,17 P.3d 296, 299-300 (2000). The ABA Official comment to Idaho Code section 30-1-742 states:[14]

> Section 742 specifies only that the demand shall be in writing. The demand should, however, set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the action sought to be taken and the grounds for that action so that the demand can be evaluated. See Allison v. General Motors Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985). Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions. In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions.

**ABA Official Comment to Idaho Code section 30-1-742** (Add. 9-10).

Here, the district court erred because the plain meaning of the requirements of Idaho Code section 30-29-742 is simply that "written demand be made on the corporation…" **Idaho Code section 30-29-742** (2015) (Add. 15). Miesen's two

---

[14] While Idaho Code section 30-1-742 (1998) was subsequently amended by Idaho Code section 30-29-742 (2015) and Idaho Code section 30-29-742 (2019), the operative text of all three statutes is identical other than "delivery of the demand" portion of Idaho Code section 30-1-742 was omitted from Idaho Code sections 30-29-742 (2015) and 30-29-742 (2019). (*Compare* Add. 1-6 *with* Add. 7 *and* Add. 8.)

derivative demand letters were more than adequate to provide the required information for the purported directors of the AIA Corporations to take legal action against the Munding Defendants (the letters were also directed at other defendants involved in another pending lawsuit in Idaho, Dkt. 11-2 at 390-473):[15]

- The two letters identified Miesen as a long-term second largest common shareholder of AIA Services (Miesen paid approximately $500,000 for his shares and has not received a penny on that investment). (6 ER 1101, 1131, 1137.); 2 ER 180; Dkt. 11-2 at 364, 375.)

- The two letters provided defined terms. (2 ER 181-82; Dkt. 11-2 at 365-66, 376.) For example, "AIA" means "AIA Services Corporation and its wholly owned subsidiary AIA Insurance." (2 ER 181; Dkt. 11-2 at 365 & 376.) "John" means "R. John Taylor and his spouse as to any property transferred to such spouse…" (*Id.*) The letter also defines a number of all parties and groups of parties. (*Id.*) The letter defines "California Lawsuit") as meaning "*Gemcap Lending I, LLC v. CropUSA Insurance Agency, Inc., et al.*, in the U.S. District Court, Central District of California, Case No. CV 13-05504 SJO (MANx)," which is the lawsuit that

---

[15] The district court erroneously failed to consider the two duplicate June 13, 2016 demand letters that were quoted in Miesen's FAC, which Miesen addresses in Section E(2) below. However, Miesen has also moved for this Court to take judicial notice of both of his derivative demand letters and the response letter from the AIA Corporations, which were filed in another lawsuit. (Dkts. 11-1, 11-2 at 364-389.)

resulted in the unlawful $12 million settlement and forms the basis of Miesen's claims against the Munding Defendants. (2 ER 182; 6 ER 1091-1197; 7 ER 1383-1410; Dkt. 11-2 at 8-283.)

- The letters request that claims be asserted against Munding, Crumb & Munding or other law firm (in case Munding changed his firm name, which he did) for legal malpractice, declaratory relief, to disgorge all fees, for breaches of fiduciary duty, for intentionally violating his duties of loyalty, for placing John Taylor's interests above the interests of the AIA Corporations' interests, to void all fee agreements and conflict waivers, and claims for concealing facts and failing to disclose facts and claims. (2 ER 180-90; Dkt. 11-2 at 364-387; 6 ER 1132-34.) The letters reference "Munding" at least 18 times. (*Id*.) However, one paragraph alone provides sufficient information regarding the claims Miesen wanted pursued:

> Pursue all possible claims against John Munding and Crumb & Munding (or such other firm Mr. Munding is operating through) for malpractice, breach of fiduciary duties and to disgorge all attorneys' fees, costs and expenses paid to them directly or indirectly by AIA for the California Lawsuit as Mr. Munding intentionally violated his duties owed to AIA, including, without limitation, his duties of loyalty owed to AIA and by taking direction and action benefitting other defendants (including John's) and placing their interests in front of AIA and by representing CropUSA, AIA and other parties when there were conflicts of interest in doing so and Mr. Munding knew that he could not properly represent AIA's interests and when he had no intention of doing so. Demand is further made to pursue all possible claims against Mr. Munding and Crumb & Munding for improperly failing to assert that the guarantees and settlement agreements entered into by AIA were not authorized and

were thus illegal or ultra-vires and by allowing AIA to enter into them in the first place. Mr. Munding places his interests in earning fees ahead of AIA's interests.

(2 ER 186-87 ¶ 22; ER 1133.) In sum, Miesen's two derivative demand letters provided more than sufficient information to the AIA Corporations and they knew that the Munding Defendants had not represented them in any other matters. The issue raised in the demands did not involve a complicated business transaction or merger. The issue was simple. Miesen demanded that the AIA Corporations file suit against the Munding Defendants for their tortious conduct. The AIA Corporations declined to do so. (Dkt. 11-2 at 388-89.)

• Miesen's demands followed the plain meaning of Idaho Code section 30-29-742 and "[d]etailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions." **ABA Official Comment to Idaho Code section 30-1-742** (Add. 10). However, neither John Taylor nor anyone else at the AIA Corporations wrote back requesting any clarification or further information and more than 90 days elapsed after the first demand letter was delivered and no response was timely provided (which should be dispositive)—John Taylor, an attorney, wrote back in a two-page letter simply stating that the claims would not be asserted and listed a number of defenses proving that he knew exactly what Miesen was requesting. (6 ER 1134-35; Dkt. 11-2 at 388-89.) This is because

John Taylor is an attorney and he is well versed in the law (which makes his conduct is more egregious). Miesen requests that, pursuant to Fed. R. Evid. 201, this Court take judicial notice of the Idaho State Bar Attorney Roster Search and the fact that John Taylor has been a licensed attorney in the state of Idaho since 1976. (https://isb.idaho.gov/licensing-mcle/attorney-roster-search/, last visited on December 16, 2019 (search term "Taylor" and then click on "Taylor, R. John".) If John Taylor did not understand any portion of the demand letters, he could have easily written back with any questions, but he did not. And most importantly, John Taylor was a defendant in the California Lawsuit (GemCap's claims included fraud, conversion and others)—he was well-versed with the facts of that lawsuit and what had transpired. (6 ER 1107, 1110-12; 3 ER 469-516; Dkt. 11-2 at 8-74.)

- Miesen provided not one, but two "written demand[s]…upon the [AIA Entities] to take suitable action." **Idaho Code section 30-29-742(1)** (2015) (Add. 15). Miesen waited over ninety days to pursue his claims (indeed, much longer hoping that the Munding Defendants would rectify their wrongs). (6 ER 1134-35.) Those two written demands complied with the plain meaning of Idaho Code section 30-29-742 and were "earnest and sincere…effort[s] [by Miesen] to induce the directors to take remedial action in the corporate name." *McCann*, 138 Idaho at 235, 61 P.3d at 592. That was all that was required. Significantly, although involving

other defendants listed in the same two demand letters, U.S. District Court Magistrate Judge Dale came to the same conclusion when the directors and officers of the AIA Corporations challenged the sufficiency of the same two demand letters in Idaho (Dkt. 11-2 at 364-389):

> The Court finds the demand letters demonstrate an earnest and sincere effort to inform the AIA board of directors of the alleged wrongdoing. To argue that Miesen could have attempted to clarify his allegations is disingenuous, considering AIA itself did not ask for clarifications. Because no follow up was requested by AIA, Miesen was left with no alternative, other than to file suit.

*Miesen v. Henderson*, No. 1:10-cv-00404-CWD, 2017 WL 1458191, at *7 (D. Idaho April 21, 2017) (Dkt. 11-2 at 361-89 (this is the same Declaration John Taylor submitted to Judge Dale with the same two demand letters). Lastly, while the district court correctly noted that Idaho does not recognize the futility exception to demands that most other states have adopted, this is another reason why the plain meaning of Idaho code is all that should apply because "In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions," which is precisely what occurred here when the Munding Defendants raised the issue. **ABA Official Comment to Idaho Code section 30-1-742** (Add. 10).

To reiterate, after considering the defined terms in the two demand letters, the specific names, claims and relief requested in the two letters and the failure of John Taylor to request more information or any clarification, Miesen's two derivative

demand letters complied with Idaho Code section 30-29-742 (2015) and provided sufficient details and information regarding the claims requested to be pursued against the Munding Defendants. (2 ER 180-90; 6 ER 1131-35; Dkt. 11-2 at 364-89.) A comparison of the two demand letters with the claims asserted in the FAC reveals that the claims and allegations are based on the same general basis asserted in the two letters. (*Id*.; 6 ER 1091-1197.) Miesen's two letters clearly articulated that he was demanding that the AIA Corporation assert claims against the Munding Defendants.

Accordingly, the district court erred and abused its discretion by dismissing Miesen's claims. This Court should reverse and reinstate the FAC.

**D. <u>At a Minimum, the District Court Erred and Abused Its Discretion by Refusing to Grant Miesen Leave to File an Amended Complaint.</u>**

### 1. Additional Standard of Review.

Dismissal of a complaint without leave to amend is improper unless it is clear, upon de novo review that the complaint could not be saved by any amendment. ***AE ex rel. Hernandez v. County of Tulare***, 666 F.3d 631, 636 (9th Cir. 2012).

### 2. There Was No Basis for the District Court to Dismiss Miesen's Claims Without Granting Him Leave to File a Second Amended Complaint.

The district court erred and abused its discretion by dismissing Miesen's FAC without granting leave to amend and without making any findings or ruling that any amendment would be futile. While Miesen maintains that amending the FAC is

unnecessary, the district court nevertheless erred and abused its discretion by not permitting Miesen to file an amended complaint to cure any perceived deficiencies.

"Dismissal without leave to amend is improper unless it is clear…that the complaint could not be saved by any amendment." ***Polich v. Burlington Northern, Inc.***, 942 F.2d 1467, 1472 (9th Cir. 1991). In addition, "an action should not be dismissed for lack of jurisdiction without giving the plaintiff an opportunity to be heard unless it is clear the deficiency cannot be overcome by amendment." ***May Department Store v. Graphic Process Co.***, 637 F.2d 1211, 1216 (9th Cir. 1980). Indeed, this Court has repeatedly held "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." ***Doe v. United States***, 58 F.3d 494, 497 (9th Cir. 1995).

Here, the district court erred and abused its discretion by dismissing Miesen's FAC without granting leave to amend, without providing any explanation for why leave was not granted and without finding that it would be futile to allow amendment—even though Miesen expressly made such a request and the Munding Defendants did not address that request or otherwise argue futility. (1 ER 1-20; 7 ER 1293-1314, 1374, 1428-37.) In addition, since Miesen's FAC only quoted to certain paragraphs of the two derivative demand letters (as indicated by the paragraph

numbers quoted), the district court should have granted Miesen leave to amend his complaint to quote the entire letters or attach the letters to his amended complaint. (6 ER 1131-34.)

Irrespective of whether this Court agrees with Miesen's analysis above, the AIA Corporations must be aligned either as plaintiffs or as defendants and, if more allegations or explanations were warranted for Miesen's two derivative demand letters, he should have been permitted to amend to cure any deficiencies and to name the AIA Corporations as nominal plaintiffs if that was truly required. In addition, the district court's statement that Miesen could refile a new lawsuit is at odds with its Order and its failure to provide adequate explanation or reasoning to advise Miesen as to precisely what deficiencies needed to be cured. Indeed, the district court's Order contained conclusory and unsupported statements and findings. (1 ER 11-20.)

Accordingly, Miesen should have been granted the opportunity to amend the complaint and the district court erred and abused its discretion by failing to do so.

### E. **The District Court Erred and Abused Its Discretion by Failing to Consider Evidence.**

#### 1. Additional Standard of Review.

The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. ***Muniz v. Amec Const. Mgmt., Inc.***, 623 F.3d 1290, 1294 (9th

Cir. 2010).

**2. The District Court Abused Its Discretion by Not Considering Miesen's June 13, 2016 Derivative Demand Letter (Dkts. 8-13 & 8-14) that Was Attached to the Louvier Declaration and When It Ruled that It Would Not Consider Declarations or Affidavits Filed in Support of Previous Motions.**

The district court abused its discretion when it *sua sponte* ruled, without citing any authority, that it would not consider declarations or affidavits (including the exhibits attached thereto) that were previously filed in support of the Munding Defendants' first Motion to Dismiss simply because they were directed at the earlier motion (which included duplicate copies of one of Miesen's derivative demand letters). (1 ER 4, 19; 7 ER 1455-56).) While Miesen moved to strike the testimony in the declaration of Mr. Louvier and a number of the exhibits for violating Rule 12(d) (Miesen did not want the district court to convert the Motion to Dismiss to one for summary judgment at that early stage), Miesen did not request to strike the June 13, 2016 derivative demand letter and in fact conceded the two letters were duplicates of the same letter as quoted in the FAC (a letter referenced and quoted in the FAC). (2 ER 180-201; 7 ER 1345.) Thus, the court abused its discretion.

**First**, the district court abused its discretion by not considering the June 13, 2016 demand letter because the authenticity of those two duplicative letters were not disputed and the FAC quoted extensively to a number of paragraphs from that letter.

(2 ER 180-201; 6 ER 1131-34.)

"If the documents are not physically attached to the complaint, they may be considered if the documents' 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee*, 250 F.3d at 689.

Thus, this Court should reverse that ruling. (1 ER 4, 19.)

**<u>Second</u>**, to the extent the district court's decision to not consider the June 13, 2016 demand letter was because of its erroneous ruling to not consider any previously filed declarations or affidavits filed in support of the first motion to dismiss, Miesen asserts that the district court abused its discretion by excluding those declarations on that basis. Miesen also asserts that the district court abused its discretion to the extent that this case is remanded to the district court because declarations and affidavits filed in a lawsuit must remain part of the record and the parties should be permitted to cite to them for motion practice and trial. (1 ER 4, 19.)

The district court did not cite any authority and the undersigned was unable to locate any authority for the district court's decisions. However, once a document, affidavit or declaration is filed, it is part of the record and remains part of the record. *C.f.* **Fed. R. Civ. P. 56(a)(c)(1)(A)** ("citing to particular parts of materials in the *record*, including depositions, documents, electronically stored information, *affidavits or declarations*…") (emphasis added); **Fed. R. Civ. P. 56(c)(3)** ("The

court need consider only the cited materials, but it may consider other materials in the *record*.") (emphasis added). Black's defines "record" as "The official report of the proceedings in a case, including the filed papers, a verbatim transcript of the trial or hearing (if any), and tangible exhibits." **Black's Law Dictionary** (11th ed. 2019).

Thus, this Court should reverse the district court on this issue.

### 3. The District Court Erred and Abused Its Discretion by Not Taking Judicial Notice of the Documents Requested by Miesen.

Miesen's counsel requested that the district court take judicial notice of four documents, but the district court failed to do so. (1 ER 1-20.) The district court abused its discretion and this Court should reverse on this issue as well.

A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." **Fed. R. Evid. 201(c)(2)**.

Here, at oral argument, in response to the Munding Defendants' expanded arguments on the statute of limitations defense, Miesen's counsel requested the district court to "take judicial under Rule 201 of Docket 9-8, of Docket 9-24, 9-25, and 9-26. And what that will show your Honor is that this case has continued to [be active]." (7 ER 1482; *see* 3 ER 469; 6 ER 1001-90.) In other words, the statute of limitations for Miesen's legal malpractice, breach of fiduciary duty and any other claims covered by the continuous representation rule continue to be tolled. *See* Section F(2) below.

Thus, this Court should reverse the district court for abusing its discretion for failing to take judicial notice of those four documents. *Lee*, 250 F.3d at 689.

**F. This Court Should Not Affirm on the Alternative Grounds Suggested by the District Court on the Statutes of Limitations or the Viability of Miesen's Claim Under Washington's Consumer Protection Act.**

**1. Additional Standard of Review.**

The district court's decision may be affirmed on any ground supported by the record, even if not relied upon by the district court. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 974 (9th Cir. 2017).

**2. Pursuant to the Continuous Representation Rule, Miesen's Claims for Legal Malpractice, Breach of Fiduciary Duties and Any Other Applicable Claims Were Timely Because the Munding Defendants Continued to Represent the AIA Corporations on Appeal and Continue to Represent Them in the Still Active California Lawsuit.**

In the Order, the district court stated "[a]lthough the Court has serious concerns going to the merits of Plaintiff's claims, particularly whether the legal malpractice claim can survive the challenge of an expired statute of limitation…" (1 ER 18.) Presumably, this Court or the Munding Defendants will seek to affirm on those grounds as to the legal malpractice and breach of fiduciary duty claims. This Court should address this issue and decline to affirm on the alternative grounds of the statute of limitations defense because Miesen's claims were tolled by the continuous representation rule.

Washington and California have both adopted the continuous representation rule to toll claims against attorneys. ***Janicki Logging & Const. Co., Inc. v. Schwabe, Williamson & Wyatt, P.C.***, 109 Wash. App. 655, 661-664, 37 P.3d 309, 314-315 (2011); ***Lockton v. O'Rourke***, 184 Cal.App.4th 1051, 1062-1069, 109 Cal.Rptr.3d 392, 400-406 (2010). In Janicki Logging, the Washington Court of Appeals adopted the continuous representation rule:

> On balance, we find the policies favoring the rule far more compelling than those against it. As Mallen and Smith reason in their treatise on attorney malpractice,
>
> > [t]he continuous representation rule is ... appropriate in those jurisdictions adopting the ... discovery rule[.] The policy reasons are as compelling for allowing an attorney to continue efforts to remedy a bad result, ... even if the client is fully aware of the attorney's error. The doctrine is fair to all concerned parties. The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to end the relationship, though the option exists. This result is consistent with all expressed policy bases for the statute of limitations.
>
> *      *      *
>
> For the above reasons, we adopt the continuous representation rule. We emphasize, however, that the rule we adopt today is a limited one. It does not apply to a client who retains new counsel on appeal. In addition, the rule does not toll the statute of limitations until the end of the attorney-client relationship, but only during the lawyer's representation of the client in the same matter from which the malpractice claim arose.

***Janicki Logging & Const. Co., Inc.***, 109 Wash. App. at 663-64, 37 P.3d 309, 314-15 (citing Mallen and Smith, supra, at 431).

Having established that both Washington and California have adopted the continuous representation rule, *Laclette v. Galindo* is instructive and dispositive. In that case, the California Court of Appeal addressed the continuous representation rule in the context of a settlement agreement and confirmed that when the client actually becomes aware of the attorney's negligence is irrelevant.

> Thus, the limitations period is tolled while the attorney continues to represent the plaintiff regarding the same specific subject matter. **The limitations period is tolled even if the client is aware of the attorney's negligence**. The Legislature's intent in adopting the continuing representation tolling provision contained in section 340.6 is set forth in the legislative history. **There were two purposes: (1) to avoid the disruption of an attorney-client relationship by a lawsuit while enabling the attorney to correct or minimize an apparent error; and (2) to prevent an attorney from defeating a malpractice cause of action by continuing to represent the client until the statutory period has expired**

*Laclette v. Galindo*, 184 Cal.App.4th 919, 926-27, 109 Cal.Rptr.3d 660, 664 (2010) (emphasis added). Then, the court held that there were material issues of fact of whether the attorney-client relationship was terminated based on a lack of activity in the lawsuit:

> As a preliminary matter, this is not a case in which the client consented to termination or in which the trial court granted an application by counsel for withdrawal.
>
> In seeking summary judgment, Galindo did not show the representation of Laclette had been fulfilled and that all agreed tasks for which Laclette retained Galindo had been completed. Galindo merely showed there had been no contact between Galindo and Laclette between January 25,

2005, the date of the second settlement, and February 9, 2007, the date Laclette commenced the instant action.

Irrespective of the lack of contact between Galindo and Laclette during said two-year period, the evidence established the following: the trial court retained jurisdiction over the Laclette/Ramirez settlement; the settlement obligated Laclette to pay Ramirez $175,000 at the rate of $3,500 per month; Laclette was paying the installments as agreed; and Galindo remained Laclette's counsel of record.

Given these circumstances, and objectively viewing continuous representation from the client's perspective, we cannot say as a matter of law that Laclette could not reasonably expect Galindo to represent her in the event of issues arising concerning the performance of the settlement. We reject Galindo's theory that the two-year hiatus, when no legal services were required of Galindo with respect to the settlement agreement, necessarily had the effect of implicitly terminating Galindo's representation of Laclette.

*Laclette*, 184 Cal.App.4th at 928-929, 109 Cal.Rptr.3d at 666 (citation and footnote omitted).

Here, this Court should decline to affirm on alternative grounds and hold the continuous representation rule has tolled Miesen's claims and continues to toll Miesen's claims because the California Lawsuit is still pending and the Munding Defendants have not withdrawn as counsel. In support of this argument, the FAC alleges that:

Despite the filing of this lawsuit, the [Munding] Defendants have continued to represent [the AIA Corporations] in the [California] Lawsuit, continued to fail to take action in the best interests of AIA (including by failing to extricate AIA from the Settlement Agreement and recover the proceeds from the sale of AIA's headquarters)…

- 48 -

(6 ER 1130 ¶ 79.) While the Munding Defendants are expected to argue that Miesen's claims accrued when they unlawfully had the AIA Corporations enter into the Settlement Agreement, the argument fails because the case remains open and active, and the Munding Defendants have not withdrawn as counsel. *Laclette*, 184 Cal.App.4th at 926-27, 109 Cal.Rptr.3d at 664.

The documents in the record that the district court and this Court may judicially notice establishes that an order was entered as recent as April 7, 2017 and the Munding Defendants had not withdrawn as counsel as of the printing of that docket sheet on September 5, 2018 (the top left hand corner contains the date printed). (3 ER 469-516.) In addition, the Munding Defendants opposed the belated effort of Donna Taylor (the Series A Preferred Shareholder) to intervene to set aside the Settlement Agreement; rather than taking that opportunity to support her request to intervene and have the Settlement Agreement set aside.[16] (6 ER 1001-1090; *see also* Dkt. 11-2 at 75-283.) This Court affirmed the denial of the belated intervention

---

[16] Donna Taylor's Brief provided the Munding Defendants with a road map for a few arguments (of several) to have the Settlement Agreement set aside (she did not assert ultra vires at that time because it is a trial court issue). (6 ER 1013-79.) Had the Munding Defendants joined in Donna Taylor's intervention instead of opposing it or pursued the same arguments before the trial court, this Court would likely not be having to address this appeal.

on February 15, 2017 (well within the statute of limitations even if that was the last date of services provided by the Munding Defendants, which it was not). (6 ER 1080-92; Dkt. 11-2 at 282-83.) Significantly, the Munding Defendants filed a joinder to GemCap's Answering Brief and an acknowledgement of oral argument—they were actively involved on that appeal. (Dkt. 11-2 at 232-35, 275-76; *see also* Dkt. 11-2 at 151-231.)

Moreover, the documents that this Court may properly judicially notice for the first time on appeal provide undisputable evidence that the California Lawsuit remains active and pending, and the Munding Defendants have not withdrawn as counsel for the AIA Corporations. (Dkts. 11-1, 11-2 at 8-74.) Indeed, as recently as October 29, 2019, the trial court entered an order on a matter. (Dkt. 11-2 at 74.) And, consistent with the intent of the continuous representation rule, the Munding Defendants could still take the proper course of action to mitigate Miesen's damages by extricating the AIA Corporations from that unauthorized and/or illegal Settlement Agreement. (7 ER 1383-1410.)

Accordingly, the undisputable evidence establishes that the Munding Defendants continue to represent the AIA Corporations in the California Lawsuit. The Munding Defendants cannot escape their tortious conduct by through their continued representation of the AIA Corporations—regardless of when the

Settlement Agreement was executed. (7 ER 1383-1410.) Thus, this Court should hold that Miesen's legal malpractice, breach of fiduciary duty and/or any other applicable claims are timely and continue to be tolled.

## VII.  CONCLUSION

For the reasons articulated above, this Court should reverse the district court consistent with the arguments asserted above.

RESPECTFULLY SUBMITTED this 16th day of December 2019.

RODERICK BOND LAW OFFICE, PLLC


By:    */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorney for Plaintiff-Appellant
        Dale L. Miesen

# VIII.   <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

Certificate of Compliance With Type-Volume Limitation, Typeface
Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B)(i) because it contains 12,322 words, according to the Word Count
feature in the Microsoft Word 2016 software, excluding the parts of the brief
exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this
brief has been prepared in a proportionally spaced typeface using Microsoft Word
2016 software in Times New Roman, 14-point, Font.

DATED this 16th day of December 2019.

RODERICK BOND LAW OFFICE, PLLC


By:___ */s/ Roderick C. Bond*_____
       Roderick C. Bond
       Attorneys for Appellant

## IX. <u>STATEMENT OF RELATED CASES</u>

The undersigned attorney states the following:

I am unaware of any related cases currently pending in this Court.

DATED this 16th day of December 2019.

RODERICK BOND LAW OFFICE, PLLC


By:   */s/ Roderick C. Bond*
        Roderick C. Bond
        Attorneys for Appellant

# X. <u>ADDENDUM TABLE OF CONTENTS</u>

| Add. | Excerpts of Record | Description |
|------|--------------------|-------------|
| 1-6  |                    | 28 U.S.C.A § 1332 |
| 7    |                    | Idaho Code section 30-29-741 (2015) |
| 8    |                    | Idaho Code section 30-29-741 (2019) |
| 9-14 |                    | Idaho Code section 30-1-742 (1998) with ABA Comments |
| 15   |                    | Idaho Code section 30-29-742 (2015) |
| 16   |                    | Idaho Code section 30-29-742 (2019) |

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or PreemptedValidity Called into Doubt by Abramson v. Marriott Ownership Resorts, Inc., C.D.Cal., Jan. 04, 2016

KeyCite Yellow Flag - Negative TreatmentProposed Legislation

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1332

§ 1332. Diversity of citizenship; amount in controversy; costs

Currentness

<Notes of Decisions for 28 USCA § 1332 are displayed in two separate documents.>

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

  **(1)** citizens of different States;

  **(2)** citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

  **(3)** citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

  **(4)** a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

**(b)** Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $75,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

**(c)** For the purposes of this section and section 1441 of this title--

  **(1)** a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action

Add. - 001

against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of--

    **(A)** every State and foreign state of which the insured is a citizen;

    **(B)** every State and foreign state by which the insurer has been incorporated; and

    **(C)** the State or foreign state where the insurer has its principal place of business; and

**(2)** the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

**(d)(1)** In this subsection--

    **(A)** the term "class" means all of the class members in a class action;

    **(B)** the term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action;

    **(C)** the term "class certification order" means an order issued by a court approving the treatment of some or all aspects of a civil action as a class action; and

    **(D)** the term "class members" means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action.

**(2)** The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--

    **(A)** any member of a class of plaintiffs is a citizen of a State different from any defendant;

    **(B)** any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

    **(C)** any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

**Add. - 002**

**(3)** A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--

**(A)** whether the claims asserted involve matters of national or interstate interest;

**(B)** whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

**(C)** whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

**(D)** whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

**(E)** whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

**(F)** whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

**(4)** A district court shall decline to exercise jurisdiction under paragraph (2)--

**(A)(i)** over a class action in which--

**(I)** greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

**(II)** at least 1 defendant is a defendant--

**(aa)** from whom significant relief is sought by members of the plaintiff class;

**(bb)** whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

**(cc)** who is a citizen of the State in which the action was originally filed; and

Add. - 003

**(III)** principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

**(ii)** during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

**(B)** two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

**(5)** Paragraphs (2) through (4) shall not apply to any class action in which--

**(A)** the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or

**(B)** the number of members of all proposed plaintiff classes in the aggregate is less than 100.

**(6)** In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

**(7)** Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of filing of the complaint or amended complaint, or, if the case stated by the initial pleading is not subject to Federal jurisdiction, as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of Federal jurisdiction.

**(8)** This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action.

**(9)** Paragraph (2) shall not apply to any class action that solely involves a claim--

**(A)** concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933 (15 U.S.C. 78p(f) (3) [2] ) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E));

**(B)** that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or

**(C)** that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b(a)(1)) and the regulations issued thereunder).

Add. - 004

**(10)** For purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.

**(11)(A)** For purposes of this subsection and section 1453, a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.

**(B)(i)** As used in subparagraph (A), the term "mass action" means any civil action (except a civil action within the scope of section 1711(2)) in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a).

**(ii)** As used in subparagraph (A), the term "mass action" shall not include any civil action in which--

   **(I)** all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State or in States contiguous to that State;

   **(II)** the claims are joined upon motion of a defendant;

   **(III)** all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action; or

   **(IV)** the claims have been consolidated or coordinated solely for pretrial proceedings.

**(C)(i)** Any action(s) removed to Federal court pursuant to this subsection shall not thereafter be transferred to any other court pursuant to section 1407, or the rules promulgated thereunder, unless a majority of the plaintiffs in the action request transfer pursuant to section 1407.

**(ii)** This subparagraph will not apply--

   **(I)** to cases certified pursuant to rule 23 of the Federal Rules of Civil Procedure; or

   **(II)** if plaintiffs propose that the action proceed as a class action pursuant to rule 23 of the Federal Rules of Civil Procedure.

**(D)** The limitations periods on any claims asserted in a mass action that is removed to Federal court pursuant to this subsection shall be deemed tolled during the period that the action is pending in Federal court.

Add. - 005

**(e)** The word "States", as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.

**CREDIT(S)**

(June 25, 1948, c. 646, 62 Stat. 930; July 26, 1956, c. 740, 70 Stat. 658; Pub.L. 85-554, § 2, July 25, 1958, 72 Stat. 415; Pub.L. 88-439, § 1, Aug. 14, 1964, 78 Stat. 445; Pub.L. 94-583, § 3, Oct. 21, 1976, 90 Stat. 2891; Pub.L. 100-702, Title II, §§ 201(a), 202(a), 203(a), Nov. 19, 1988, 102 Stat. 4646; Pub.L. 104-317, Title II, § 205(a), Oct. 19, 1996, 110 Stat. 3850; Pub.L. 109-2, § 4(a), Feb. 18, 2005, 119 Stat. 9; Pub.L. 112-63, Title I, §§ 101, 102, Dec. 7, 2011, 125 Stat. 758.)

Notes of Decisions (958)

Footnotes

1        So in original. Reference to "16(f)(3)" probably should be preceded by "section".

2        So in original. Probably should be "77p(f)(3)".

28 U.S.C.A. § 1332, 28 USCA § 1332

Current through P.L. 116-73. Some statute sections may be more current, see credits for details.

---

                 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
            Part 7. Shareholders

I.C. § 30-29-741
Formerly cited as ID ST § 30-1-741

§ 30-29-741. Standing

Currentness

A shareholder may not commence or maintain a derivative proceeding unless the shareholder:

(1) Was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one (1) who was a shareholder at that time; and

(2) Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

**Credits**
Added by S.L. 2015, ch. 243, § 62, eff. July 1, 2015.

Notes of Decisions (10)

I.C. § 30-29-741, ID ST § 30-29-741
The statutes and Constitution are current through the 2016 Second Regular Session of the 63rd Idaho Legislature.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

 © 2016 Thomson Reuters. No claim to original U.S. Government Works.

West's Idaho Code Annotated
    Title 30. Corporations
        Chapter 29. General Business Corporations
        Part 7. Shareholders

I.C. § 30-29-741
Formerly cited as ID ST § 30-1-741

§ 30-29-741. Standing

Effective: July 1, 2019
Currentness

A shareholder may not commence or maintain a derivative proceeding unless the shareholder:

(a) Was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one (1) who was a shareholder at that time; and

(b) Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

**Credits**

Added by S.L. 2015, ch. 243, § 62, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 66, eff. July 1, 2019.

Notes of Decisions (10)

I.C. § 30-29-741, ID ST § 30-29-741
Statutes and Constitution are current with all legislation of the 2019 First Regular Session of the 65th Idaho Legislature, which adjourned sine die on April 11, 2019.

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

**Add. - 008**

▷

West's Idaho Code Annotated Currentness
   Title 30. Corporations
      Chapter 1. General Business Corporations (Refs & Annos)
         Part 7. Shareholders
         ➡➡ § 30-1-742. Demand

No shareholder may commence a derivative proceeding until:

(1) A written demand has been made upon the corporation to take suitable action; and

(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

CREDIT(S)

S.L. 1998, ch. 223, § 4.

ABA OFFICIAL COMMENT

Section 742 requires a written demand on the corporation in all cases. The demand must be made at least 90 days before commencement of suit unless irreparable injury to the corporation would result. This approach has been adopted for two reasons. First, even though no director may be "qualified" (see section 143), the demand will give the board of directors the opportunity to re-examine the act complained of in the light of a potential lawsuit and take corrective action. Secondly, the provision eliminates the time and expense of the litigants and the court involved in litigating the question whether demand is required. It is believed that requiring a demand in all cases does not impose an onerous burden since a relatively short waiting period of 90 days is provided and this period may be shortened if irreparable injury to the corporation would result by waiting for the expiration of the 90-day period. Moreover, the cases in which demand is excused are relatively rare. Many plaintiffs' counsel as a matter of practice make a demand in all cases rather than litigate the issue whether demand is excused.

*1. Form of Demand*

Section 742 specifies only that the demand shall be in writing. The demand should, however,

set forth the facts concerning share ownership and be sufficiently specific to apprise the corporation of the action sought to be taken and the grounds for that action so that the demand can be evaluated. See Allison v. General Motors Corp., 604 F. Supp. 1106, 1117 (D. Del. 1985). Detailed pleading is not required since the corporation can contact the shareholder for clarification if there are any questions. In keeping with the spirit of this section, the specificity of the demand should not become a new source of dilatory motions.

### 2. Upon Whom Demand Should Be Made

Section 742 states that demand shall be made upon the corporation. Reference is not made specifically to the board of directors as in previous section 740(b) since there may be instances such as a decision to sue a third party for an injury to the corporation, in which the taking of, or refusal to take, action would fall within the authority of an officer of the corporation. Nevertheless, it is expected that in most cases the board of directors will be the appropriate body to review the demand. To ensure that the demand reaches the appropriate person for review, it should be addressed to the board of directors, chief executive officer, or corporate secretary of the corporation at its principal office.

### 3. The 90-Day Period

Section 742(2) provides that the derivative proceeding may not be commenced until 90 days after demand has been made. Ninety days has been chosen as a reasonable minimum time within which the board of directors can meet, direct the necessary inquiry into the charges, receive the results of the inquiry and make its decision. In many instances a longer period may be required. See, e.g., Mozes v. Welch, 638 F. Supp. 215 (D. Conn. 1986) (eight month delay in responding to demand not unreasonable). However, a fixed time period eliminates further litigation over what is or is not a reasonable time. The corporation may request counsel for the shareholder to delay filing suit until the inquiry is completed or, if suit is commenced, the corporation can apply to the court for a stay under section 743.

Two exceptions are provided to the 90-day waiting period. The first exception is the situation where the shareholder has been notified of the rejection of the demand prior to the end of the 90 days. The second exception is where irreparable injury to the corporation would otherwise result if the commencement of the proceeding is delayed for the 90-day period. The standard to be applied is intended to be the same as that governing the entry of a preliminary injunction. Compare Gimbel v. Signal Cos., 316 A.2d 599 (Del. Ch. 1974) with Gelco Corp. v. Coniston Partners, 811 F.2d 414 (8th Cir. 1987). Other factors may also be considered, such as the possible expiration of the statute of limitations, although this would depend on the period of time during which the shareholder was aware of the grounds for the proceeding.

It should be noted that the shareholder bringing suit does not necessarily have to be the person making the demand. Only one demand need be made in order for the corporation to consider whether to take corrective action.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**4. Response by the Corporation**

There is no obligation on the part of the corporation to respond to the demand. However, if the corporation, after receiving the demand, decides to institute litigation or, after a derivative proceeding has commenced, decides to assume control of the litigation, the shareholder's right to commence or control the proceeding ends unless it can be shown that the corporation will not adequately pursue the matter. As stated in Lewis v. Graves, 701 F.2d 245, 247-48 (2d Cir. 1983):

The [demand] rule is intended "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." Permitting corporations to assume control over shareholder derivative suits also has numerous practical advantages. Corporate management may be in a better position to pursue alternative remedies, resolving grievances without burdensome and expensive litigation. Deference to directors' judgments may also result in the termination of meritless actions brought solely for their settlement or harassment value. Moreover, where litigation is appropriate, the derivative corporation will often be in a better position to bring or assume the suit because of superior financial resources and knowledge of the challenged transactions. [Citations omitted.]

LIBRARY REFERENCES

    Corporations ☞ 206, 320(5).
    Westlaw Topic No. 101.
    C.J.S. Corporations §§ 489 to 490, 495 to 499.

RESEARCH REFERENCES

Forms

Fletcher Corporation Forms Annotated § 55:5, Shareholder Derivative Actions.

Treatises and Practice Aids

Law of Corp. Offs. & Dirs.: Rts., Duties & Liabs. § 9:13, Universal Demand Requirement.

Shareholder Derivative Actions: Law and Practice § 5:9, Demand on Directors--Rationales for Demand.

Shareholder Derivative Actions: Law and Practice § 5:12, Demand on Directors--Excuse of Demand.

NOTES OF DECISIONS

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Derivative actions 3
Necessity of demand 2
Purpose 1
Sufficiency of demand 4

1. Purpose

The legislative intent in enacting the statutory requirement of a written demand before a shareholder brings a derivative action was to no longer recognize "futility" as an exception to the requirement of demand as a condition preceding the institution of a shareholder's derivative action. Mannos v. Moss, 2007, 155 P.3d 1166, 143 Idaho 927. Corporations And Business Organizations ☞ 2040(1)

2. Necessity of demand

Any written demand that shareholder in Idaho closely-held corporation may have made after district court granted summary judgment to corporate directors, as to shareholder's direct claims against directors alleging that directors depleted corporate assets, was inconsequential, as to statutory requirement that a shareholder must make a written demand before bringing a shareholder derivative action; statute required the demand to be made 90 days before commencement of derivative action. Mannos v. Moss, 2007, 155 P.3d 1166, 143 Idaho 927. Corporations And Business Organizations ☞ 2088

Shareholder was not excused from complying with statutory requirement that a shareholder must make a written demand upon corporation for action at least 90 days before commencing a derivative action, even though shareholder claimed that corporation was being irreparably harmed and corporation had previously rejected a few of shareholder's requests regarding alleged corporate misconduct; none of those requests indicated that legal action would be taken if corporate conduct was not corrected, and nothing in record suggested that irreparable injury would result by waiting for the expiration of the 90-day period. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2040(1)

Futility exception no longer applies to the requirement that written demand precede the commencement of a shareholder's derivative action. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2040(1)

Prerequisite to derivative action, stockholder must show corporation has refused demand to sue or that such demand is excused as futile under circumstances. Knutsen v. Frushour, 1968, 92 Idaho 37, 436 P.2d 521. Corporations And Business Organizations ☞ 2040(1); Corporations And Business Organizations ☞ 2041

Where corporation is in control of directors or trustees whose acts are questioned and to make

application to them to bring suit would be unavailing, a stockholder may sue without making such application. Fortner v. Cornell, 1945, 66 Idaho 512, 163 P.2d 299. Corporations And Business Organizations ☞ 1931

Stockholders may sue officer or directors to restrain unlawful act if demand on corporation to sue would be useless. Morton v. Morton Realty Co., 1925, 41 Idaho 729, 241 P. 1014. Corporations And Business Organizations ☞ 1931

### 3. Derivative actions

Minority shareholder's causes of action against closely-held corporation and two of its directors for breach of fiduciary duty, negligence, conversion, and other claims were derivative, rather than individual, in nature, and thus shareholder could not commence action until 90-day period following the service of written demand on corporation had expired; shareholder's alleged injuries were dependent on his status as a shareholder. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2087

A stockholder may sue in equity in his own name to enforce liability of corporation directors for fraud, malfeasance, or gross negligence, when corporation refuses or directors in control are themselves answerable, or have an identity of interest with parties charged. Smith v. Rader, 1918, 31 Idaho 423, 173 P. 970. Corporations And Business Organizations ☞ 1931

### 4. Sufficiency of demand

Only the third of shareholder's letters was sufficient to constitute a "written demand" for corporation to take action, for purposes of statute making a written demand a prerequisite to commencing a derivative action, where shareholder's initial two letters were delivered only to the corporation's attorney and did not make an explicit demand upon the corporation to take suitable action, and shareholder's third letter was copied to the directors, sufficiently detailed the alleged wrongful corporate conduct, and requested that the corporation take suitable action. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2038

A complaint is not a sufficient demand under statute requiring that a shareholder must make a written demand upon a corporation at least 90 days before commencing a derivative action. I.C. § 30-1-742. McCann v. McCann, 2002, 61 P.3d 585, 138 Idaho 228. Corporations And Business Organizations ☞ 2038

I.C. § 30-1-742, ID ST § 30-1-742

Current through emergency effective legislation of the 2014 Second Regular Session of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

62nd Idaho Legislature enacted as of March 26, 2014.

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

West's Idaho Code Annotated
Title 30. Corporations
Chapter 29. General Business Corporations
Part 7. Shareholders

I.C. § 30-29-742
Formerly cited as ID ST §30-1-742

§ 30-29-742. Demand

Currentness

No shareholder may commence a derivative proceeding until:

(1) A written demand has been made upon the corporation to take suitable action; and

(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

**Credits**
Added by S.L. 2015, ch. 243, § 62, eff. July 1, 2015.

Notes of Decisions (11)

I.C. § 30-29-742, ID ST § 30-29-742
Current through the 2016 Second Regular Session of the 63rd Idaho Legislature.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**Add. - 015**

West's Idaho Code Annotated
Title 30. Corporations
Chapter 29. General Business Corporations
Part 7. Shareholders

I.C. § 30-29-742
Formerly cited as ID ST § 30-1-742

§ 30-29-742. Demand

Effective: July 1, 2019
Currentness

No shareholder may commence a derivative proceeding until:

(a) A written demand has been made upon the corporation to take suitable action; and

(b) Ninety (90) days have expired from the date delivery of the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety (90) day period.

**Credits**

Added by S.L. 2015, ch. 243, § 62, eff. July 1, 2015. Amended by S.L. 2019, ch. 90, § 67, eff. July 1, 2019.

Notes of Decisions (11)

I.C. § 30-29-742, ID ST § 30-29-742
Statutes and Constitution are current with all legislation of the 2019 First Regular Session of the 65th Idaho Legislature, which adjourned sine die on April 11, 2019.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Add. - 016